# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIKKI J. SIMON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. CIV-16-480-STE |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (ECF No. 14) (TR. ____). Both parties to the proceedings have consented to the exercise of jurisdiction by a United States Magistrate Judge to order the entry of a final judgment. Upon review of the pleadings, the record, and the parties' briefs, the Commissioner's decision is **AFFIRMED**.

## I.     PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI alleging disability beginning October 3, 2011. (TR. 14). The applications were denied on initial consideration and on reconsideration at the administrative level. At Plaintiff's request, the Administrative Law Judge (ALJ) held a *de novo* hearing on June 19, 2014. (TR. 41-71). Plaintiff appeared

with a non-attorney representative and testified in support of her application. A vocational expert (VE) also testified at the request of the ALJ. The ALJ issued his decision on September 17, 2014, finding that Plaintiff was not disabled. (TR. 18-33). The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner. (TR. 1-4). This judicial appeal followed.

## II. THE ADMINISTRATIVE DECISION

In addressing Plaintiff's applications, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity from her alleged onset date. (TR. 20). At step two, the ALJ identified Plaintiff's severe impairments: major depressive disorder; generalized anxiety disorder with agoraphobia; post-traumatic stress disorder ("PTSD"); Takotsubi cardiomyopathy; back pain; methamphetamine abuse (in remission); and headaches. (TR. 20). At step three, the ALJ found that Plaintiff does not have a physical or mental impairment or combination of impairments that meets or equals any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, App'x. 1 (TR. 21).

After a thorough discussion of the evidence in the record, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to performing simple tasks with routine supervision; limited to just occasional contact with co-workers and supervisors; would have no work-related contact with the

general public; and would need to avoid concentrated exposure to fumes, dust and poorly ventilated areas.

(TR. 24). The ALJ compared Plaintiff's past relevant work to her RFC and determined she could not perform any of her past jobs as motor vehicle assembler, sewing machine operator, trailer assembler or sales clerk/cashier. (TR. 31).

At step five, the ALJ considered the testimony of the VE and determined there were jobs existing in significant numbers in the national economy that Plaintiff could perform including Housekeeper/cleaner; Marker; and Laundry folder. (TR. 32). Thus, at step five of the sequential evaluation, the ALJ determined Plaintiff is not disabled.

## III. ISSUES PRESENTED

In two related propositions (A and C), Plaintiff takes issue with the ALJ's mental RFC. The first challenge is based on the ALJ's alleged error in failing to incorporate his step two and three findings—that Plaintiff has moderate difficulties in maintaining concentration, persistence or pace—directly into the RFC. (ECF No. 20:4-5). Additionally, Plaintiff challenges the ALJ's failure to specifically discuss written comments on the telephone application for benefits regarding Plaintiff's ability to remember and answer questions. (ECF No. 20:7-8).

Plaintiff also challenges the ALJ's physical RFC in two related propositions (B and D). First, Plaintiff contends the ALJ's failure to "perform a function-by-function assessment" of her physical limitations at step four constitutes reversible error. (ECF No. 20:5-7). Second, Plaintiff asserts the physical RFC assessment that Plaintiff can perform

light work is insufficient because no medical opinion specifically refers to her ability to do light work. (ECF No. 20: 8-9).

In proposition E, Plaintiff contends the ALJ did not sustain her burden of proof at step five where he identified three jobs Plaintiff could still do despite her impairments. Plaintiff contends a reasoning level of 2, assigned by the authors of the Dictionary of Occupational Titles (DOT) to two of the three jobs identified at step five by the VE, is inconsistent with the ALJ's conclusion that Plaintiff can do only simple work. (ECF No. 20:9-10).

Finally, in proposition F, Plaintiff challenges the ALJ's credibility determination as "unsupported by … substantial evidence." (ECF No. 20:10-13).

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

## V. ANALYSIS

### A. Mental RFC

Plaintiff asserts the ALJ's findings at steps two and three—that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace—should have been incorporated directly into the RFC. (ECF No. 20:4-5). But the law on this issue is

4

clearly settled: findings made in consideration of the Paragraph B criteria included in the Listing of Impairments for mental disorders, in this case Listings 12.04 and 12.06, are *not* an RFC determination. *See* Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' ... criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

At steps two and three of the sequential analysis, the ALJ determines whether the claimant has a severe impairment (step 2) and whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (step 3). Here, the ALJ found at step three of the sequential process of evaluation that Plaintiff had only a moderate—not marked—limitation of concentration, persistence and pace. (TR. 23). Listings 12.04, 12.06, paragraph B. "The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203-1204 (10th Cir. 2015) (finding ALJ accounted for claimant's moderate mental deficits by limiting him to simple tasks and unskilled work).

In assessing the Paragraph B criteria, the ALJ relied primarily on the consultative mental status examination of Dr. Parrid Shah, the opinion of whom he gave great weight:

> With regard to concentration, persistence or pace, the claimant has no more than moderate difficulties. On direct evaluation by Dr. Shah, the

> consultative psychiatric examiner of record, the claimant demonstrated no deficit in her memory, attention, concentration, ability to follow directions or cognitive functioning. (Exhibit 4F). While it is reasonable to infer that poor sleep, chronic pain and depressed mood may cause some interference in this functional area, the record does not warrant finding a greater degree of limitation.

(TR. 23).

Relevant to concentration, persistence or pace, Dr. Shah noted Plaintiff was able to recall three of three objects immediately as well as three of three objects after five minutes. She was also able to perform serial threes from one to one hundred and count from twenty to one backwards. (TR. 335).

The Tenth Circuit Court of Appeals held that "moderate difficulty with concentration, persistence, and pace is encompassed by the limitation of work involving simple tasks with some detail." *Orso v. Colvin*, 658 Fed. App'x. 418, 420 (10th Cir. Sep. 29, 2016) (*citing Vigil*, 805 F.3d at 1203).

In this case, the ALJ's RFC and hypothetical question to the VE included mental limitations almost identical to those found in *Orso*: "The individual would be limited to simple tasks with routine supervision; would be limited to just occasional contact with coworkers and supervisors; [and] would have no work-related contact with the general public[.]" (TR. 64). Thus, both the RFC and the hypothetical question to the VE account for limitations caused by Plaintiff's mental condition, and remand is not warranted.[1]

---

[1] Plaintiff relies on several older, unpublished cases in support of her challenge to the RFC. But this Court relies on *Vigil*, a more recent published case. The Court also finds the recent, unpublished case, *Orso*, to be persuasive.

In her second challenge to the ALJ's mental RFC determination, Plaintiff contends the ALJ erred in failing to explicitly mention a third-party statement from L. Faber, an "employee of the Defendant." Faber took Plaintiff's initial disability application by telephone on August 8, 2012. As Plaintiff observes, Faber "specifically noted on the application that Plaintiff had difficulty concentrating, answering, and had trouble remembering." (ECF No. 20:7). *See also* TR. 200. Plaintiff cites Social Security Regulation (SSR) 96-7p for this proposition:

> The adjudicator must also consider any observations about the individual recorded by Social Security Administration (SSA) employees during interviews, whether in person or by telephone. In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.

SSR 96-7p, 1996 WL 374186 at *5 (July 2, 1996) (emphasis added). *See also*, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ruling Plaintiff cites addresses evidence an ALJ should consider when evaluating a claimant's credibility. But the regulations governing evidence an ALJ should consider in determining a claimant's RFC, 20 *see* C.F.R. §§ 404.1545(e), 416.945(e), reference the evidence listed in §§ 404.1529(c) and 416.929(c) as relevant to the RFC determination as well. Nevertheless, "an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted).

Of course, the record must demonstrate that the ALJ *considered* all the evidence. Here, the ALJ stated he had carefully considered "the entire record," and his discussion

of the evidence and reasons for his conclusions demonstrate he adequately considered Plaintiff's alleged impairments. (TR. 24). "When an 'ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he adequately considered [a claimant's] alleged impairments,' we take him 'at his word' when he 'indicates he has considered all the evidence.'" *Shockley v. Colvin*, 564 F. App'x 935, 937 (10th Cir. 2014) (*quoting Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir.2009)). Thus, the ALJ's mental RFC is supported by substantial evidence in the record. The observation referenced by Plaintiff is not sufficient to overwhelm the evidence in the record that supports the ALJ's mental RFC.

### B. Physical RFC

Plaintiff contends the ALJ erred in that he "failed to perform the requisite function-by-function assessment in accordance with SSR 96-8p." (ECF No. 20:5). Without such an assessment, Plaintiff contends, "[i]t is impossible to determine from [the definition of light work] how the ALJ assessed Plaintiff's actual ability to walk, sit, stand, push, and pull." (ECF No. 20:6).

Social Security Ruling 96–8p provides, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96–8p, 1996 WL 374184, at *3. The Ruling states further that an ALJ's "[i]nitial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case." *Id.* Therefore, the Ruling directs that "[a]t step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,'

8

'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it." *Id.*

But in this case, the ALJ found at step four that Plaintiff could not perform any of her past relevant work. Thus, the absence of a function-by-function analysis could not have adversely affected the decision at that step.

The ruling also states a function-by-function analysis of the seven strength demands—sitting, standing, walking, lifting, carrying, pushing and pulling—is important at step five, *when an ALJ applies the Medical–Vocational Guidelines to determine whether there is other work the claimant could do*. *See id.* at *4. A function-by-function analysis is important when the ALJ applies the guidelines because otherwise, an ALJ "may ... overlook limitations and restrictions that would narrow the ranges and types of work an individual may be able to do." *Id.* Application of the guidelines without a function-by-function analysis could, therefore, result in an incorrect decision. *Id.*

In this case, however, the ALJ did not apply the Medical-Vocational Guidelines in determining there are other jobs existing in significant numbers in the national economy that Plaintiff can perform. The ALJ used the guidelines as a framework for his decision making, but he relied primarily on the testimony of the VE. (TR. 32).

The Tenth Circuit Court of Appeals has held that an ALJ does not err in failing to perform a function-by-function assessment where the ALJ found the claimant could

perform the full range of sedentary work, albeit that the ALJ applied the Medical-Vocational Guidelines. *See Herndon v. Colvin*, 767 F.3d 951, 957 (10th Cir. 2014) (ALJ's failure to find explicitly that claimant was capable of sitting for six hours during a regular eight-hour work day was not critical to outcome of case, and claimant did not demonstrate error).

In this case, the ALJ did not find that Plaintiff could perform the full range of light work; but the only physical limitation was "the need to avoid concentrated exposure to fumes, dust and poorly ventilated areas." (TR. 24). This limitation is not related to any of the strength demands of light work. Significantly, Plaintiff points to no evidence—and this Court has found no evidence—supporting a conclusion that Plaintiff has limitations in any of the seven strength demands that would limit her ability to perform most light work. Thus, this Court concludes the ALJ's failure to perform a function by function analysis of the seven strength areas does not constitute reversible error. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine the correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense …. [W]e cannot insist on technical perfection.").

Plaintiff also challenges the ALJ's physical RFC, contending it is not supported by "any medical opinions of record." (ECF No. 20:8). Plaintiff takes the unusual position

that the ALJ's RFC for light work conflicts with the medical opinions of state agency doctors because those opinions found on initial determination and reconsideration that "there were no medically determinable physical impairments." *Id.*

Plaintiff's "contention rests on an unduly narrow view of the role of the administrative factfinder in social security disability proceedings." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). In *Chapo*, the Tenth Circuit rejected the argument that the limitations in an ALJ's mental RFC assessment must always be supported by a specific medical opinion, noting that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Id.* To the contrary, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id.* (quotation and alteration omitted); *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c) (providing ALJ is responsible for assessing RFC). And the ALJ's RFC assessment is an administrative, rather than a medical, determination. *See* Social Security Ruling (SSR) 96–5p, 1996 WL 374183, at *5 (July 1996) ("The term 'residual functional capacity assessment' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record .... [A] medical source statement must not be equated with the administrative finding known as the RFC assessment."). *See also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (it is the duty of the ALJ, not a physician, to review all the evidence and determine a claimant's RFC from the medical record).

Moreover, an ALJ does not commit reversible error by tempering the extremes of a medical opinion adverse to a claimant for the claimant's benefit. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Plaintiff contends, the ALJ should have further developed the record by ordering "a consultative examination or an opinion from a treating physician as to Plaintiff's functional limitations stemming from her 'severe' physical impairment." (ECF No. 20:8-9). This Court disagrees. Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record and later fault the ALJ for not performing a more exhaustive investigation.[2] *See Branum v. Barnhart*, 385 F.3d 1268, 1271–72 (10th Cir. 2004) (concluding the ALJ satisfactorily developed the record when the claimant's "counsel did not indicate or suggest to the ALJ that any medical records were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records"). Requiring such a duty would contravene the principle that the ALJ is not required to act as the claimant's advocate to meet his duty to develop the record. *See Henrie v. United States Dep't of Health & Human Services*, 13 F.3d 359, 360–61 (10th Cir. 1993). "An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). In this case, there were no medical opinions missing from the record

---

[2] In this case, Plaintiff's representative asked for and received two additional weeks to submit recent medical records from a new treating source. (TR. 44). There was no indication, however, that Plaintiff sought the ALJ's help in procuring those records.

12

to which the ALJ was alerted. The ALJ's physical RFC was supported by substantial evidence in the record, and the ALJ had no duty to further develop the record.

### C. Step Five

The ALJ found Plaintiff could perform "simple tasks with routine supervision." (TR. 24). Plaintiff contends this finding regarding her RFC is incompatible with jobs such as Marker and Laundry folder that require level two reasoning: the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DOT 920.687-126; 369.687-018.

The DOT includes a General Education Development (GED) Scale composed of three divisions: (1) reasoning development; (2) mathematical development; and (3) language development. *See* DOT, Appendix C, Components of the Definition Trailer, 1991 WL 688702. The GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Id.*

The Tenth Circuit concluded in at least one case that an RFC for "simple and routine work tasks" seemed "consistent" with level-two reasoning. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). In this case, the limitation to "simple tasks with routine supervision" is nearly identical to the limitation in *Hackett*. Moreover, the ALJ questioned the VE as to whether her testimony was inconsistent with the information in the DOT. The VE noted the DOT "does not address specific exposure to coworkers, supervisors or public" and acknowledged that part of her testimony was based on her

13

"experience working with employers and examining job analysis." (TR. 65). She implied the rest of her testimony was consistent with information in the DOT. Applying the principles in *Hackett* to the factually similar circumstances in this case, the Court concludes the VE's testimony was consistent with information in the DOT.[3]

D. **Credibility**

Plaintiff challenges the ALJ's credibility analysis on the bases that the ALJ improperly considered Plaintiff's failure to stop smoking, improperly considered her contradictory statements about past substance abuse, and improperly considered her "demeanor" during the hearing. But a review of the ALJ's decision demonstrates the credibility analysis is supported by substantial evidence.

Once an ALJ finds a claimant to have nonexertional impairments, he must take the next step and assess the claimant's credibility. *See* 20 C.F.R. §§ 404.1529; 416.929. In doing so, he should closely and affirmatively link his findings with substantial evidence. *See Hackett v. Barnhart*, 395 F.3d at 1173. If, however, the ALJ sets forth the evidence he relies upon in evaluating credibility, he "need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes–Zachary*, 695 F.3d at 1167 (quotation omitted). Again, "common sense, not technical perfection, is [the court's] guide." *Id.*

---

[3] Because the ALJ's finding regarding Plaintiff's ability to do the jobs of Marker and Laundry folder is supported by sufficient evidence, the Court need not consider whether the job of Housekeeper, standing alone, would be sufficient to support the ALJ's step-five findings.

14

In considering Plaintiff's credibility concerning the severity of her symptoms, the ALJ noted her physical complaints "are largely unverified by the objective medical evidence." (TR. 29). The consultative medical report from Dr. Ronald Schatzman, for example, listed Plaintiff's subjective complaints, but on examination, Dr. Schatzman found no abnormalities and set forth no work-related limitations. (TR. 27; 325-332).

The results of the psychiatric consultative evaluation by Dr. Parrid Shah likewise set forth no work-related limitations resulting from Plaintiff's major depression, PTSD or generalized anxiety. (TR. 27; 333-336). Dr. Shah stated that Plaintiff's symptoms would likely improve in the next twelve months. (TR. 30).

Plaintiff was hospitalized after a suicide attempt, but she stabilized quickly and was released after one week of conservative treatment. Thereafter, Plaintiff's mental condition remained stable with medication management only, for which she was seen every three months. (TR. 29).

The ALJ noted Plaintiff's complaints of back pain, but found, based on the medical evidence and Plaintiff's testimony, that Plaintiff's back pain is mild and intermittent in nature, with no radiation of pain and no neurologic or motor deficits. (TR. 29).

Plaintiff's cardiac condition, "Takotsubu cardiomyopathy," is a form of stress-related cardiomyopathy.[4] (TR. 29; 547). The heart attack occurring in May 2013 was

---

[4] "Takotsubo cardiomyopathy mimics acute coronary syndrome and is accompanied by reversible left ventricular apical ballooning in the absence of angiographically significant coronary artery stenosis. In Japanese, 'tako-tsubo' means 'fishing pot for trapping

apparently the result of Plaintiff's having "huffed" gasoline in an attempt to commit suicide. (TR. 360-364; 536-601). Ultimately, however, Plaintiff had no evidence of systolic or diastolic failure. Her left ventricular systolic function was "low normal" on testing. (TR. 22; 599).

The evidence cited by the ALJ constitutes substantial evidence in support of his credibility findings. But Plaintiff contends the ALJ improperly considered Plaintiff's failure to quit smoking, her previous drug abuse, and her demeanor at the hearing to evaluate her credibility. (ECF No. 20:10-13). The Court does not read the ALJ's decision in this light.

One of the symptoms Plaintiff contends she has is trouble breathing—allegedly a result of her cardiac condition. The ALJ noted Plaintiff's admission regarding her smoking and its probable impact on her ability to breathe. (TR. 26). The ALJ also noted that "Plaintiff continues to smoke despite her heart problem." (TR. 29). Other than these two brief references, the ALJ did not discuss Plaintiff's failure to quit smoking, and he did not even suggest that Plaintiff's continued smoking is an example of Plaintiff's failure to comply with prescribed treatment. Thus, the ALJ's brief references to Plaintiff's smoking do not constitute reversible error.

---

octopus,' and the left ventricle of a patient diagnosed with this condition resembles that shape. Takotsubo cardiomyopathy, which is transient and typically precipitated by acute emotional stress, is also known as 'stress cardiomyopathy' or 'broken-heart syndrome.'" (Tex. Heart Inst. J. 2007; 34(1): 76–79.).

Plaintiff also suggests the ALJ pinned his credibility analysis on Plaintiff's prior drug use, a practice disapproved by the SSA. Plaintiff cites Social Security Ruling 16-3p (effective March 28, 2016)[5] for this proposition:

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p at *10.

The ALJ made one brief reference to Plaintiff's former substance abuse that could be viewed as impacting his view of Plaintiff's credibility: [Plaintiff] was quite vague in answering questions about her past and current substance use, contradicting herself during her testimony. (TR. 29). The Court notes the ALJ did not have the benefit of SSR 16-3p when he wrote the unfavorable decision. More importantly, however, is the fact that the ALJ, as demonstrated above, primarily relied on the proper factors in assessing Plaintiff's credibility. Thus, at most, the ALJ's consideration of Plaintiff's inconsistent testimony was harmless error. *See Fischer–Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir.2005) (recognizing that harmless error analysis is applicable if "no reasonable

---

[5] The ruling emphasizes that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029 at *1 (Mar. 28, 2016).

administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (quotation omitted)).

## CONCLUSION

The decision of the Commissioner is **AFFIRMED**. Judgment will be entered accordingly.

ENTERED on March 30, 2017.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE